<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

LOUIS D. DESSOURCES,

                Plaintiff,

v.

DENNIS MANNING, *et al.*,

                Defendants.

Civil Action No: 18-09324 (SDW)(ESK)

**OPINION**

August 31, 2021

**WIGENTON**, District Judge.

Before this Court is Plaintiff's appeal (D.E 192-3) of Magistrate Judge Edward S. Kiel's ("Judge Kiel") April 8, 2021 Order (the "Order") denying Plaintiff's request for default against Defendant Orange Township ("Defendant Orange") (D.E. 187), as well as five separate motions for summary judgment (collectively, the "Motions"), brought pursuant to Federal Rule of Civil Procedure ("Rule") 56.  The following Defendants bring Motions: (1) Odabro African Restaurant and Lounge, Inc. ("Odabro") (D.E. 148); (2) Denise Banks ("Officer Banks") (D.E. 156); (3) Richard Adrienzen ("Officer Adrienzen"), Milton Mendoza ("Officer Mendoza"), and Rudolph Simmonds ("Officer Simmonds") (collectively the "Walgreens Officers") (D.E. 157); (4) Defendant Orange (D.E. 174); and (5) Quentan Boyd ("Officer Boyd"), Raymond Hamm ("Officer Hamm"), and Rennie Wilson ("Officer Wilson") (collectively, the "Odabro Officers") (D.E. 177).[1] Each moving Defendant requests summary judgment on the claims asserted in Plaintiff Louis D.

---

[1] Plaintiff repeatedly misspells Officer Adrienzen's name.  (*See, e.g.*, D.E. 91 ("Compl."), at 36 ("Addrienzen"); D.E. 183-3 at 19 ("Adrienza").)  For clarity, this Opinion refers to Defendant as "Adrienzen."  Defendant Odabro is also misnamed as "Defendant Odabro Lounge 8 Bar" in the operative complaint's caption.  (Compl.)

Dessources' ("Plaintiff") Third Amended Complaint ("TAC") (D.E. 91).   Jurisdiction is proper

pursuant to 28 U.S.C. § 1331 and § 1367(a).   Venue is proper pursuant to 28 U.S.C. § 1391.   This

opinion is issued without oral argument pursuant to Rule 78.   For the reasons stated herein, the

Order is **AFFIRMED** and the Motions are **GRANTED.**

## I.      BACKGROUND[2]

Plaintiff is a resident of Orange, New Jersey.   (Compl. 1.)   Odabro is a bar and lounge

located in Orange, New Jersey.   (*Id.* at 7.)   Officer Banks, the Odabro Officers, and the Walgreens

Officers (collectively, the "Officer Defendants") are police officers employed by the Orange Police

Department.   (*Id.* at 3, ¶ 2; 6, ¶ 11.)   Defendant Orange[3] is a municipality in Essex County, New

Jersey.   (*Id.* at 1.)

---

[2] As an initial matter, the TAC is poorly pleaded.   (*See generally* Compl.)   It presents a rambling narrative of multiple disparate events with little chronological structure, numerous spelling errors, and abbreviations that are inappropriate for a counseled filing.   (*Id.*)   The same is true of Plaintiff's filings in opposition.   (*See* D.E. 183; D.E. 188.)

Because Plaintiff "lumps all his allegations of constitutional violations" together as a "shotgun pleading," "without connecting the facts with respect to specific actors to the alleged violations," it is challenging to determine whether each individual claim is supported by the record.   *McCarthy v. Cty. of Bucks*, Civ. No. 08-1123, 2008 WL 5187889, at *4 n.6 (E.D. Pa. Dec. 8, 2008); *see also Gov't Employees Ins. Co. v. Pennsauken Spine & Rehab P.C.*, Civ. No. 17-11727, 2018 WL 3727369, at *3 (D.N.J. Aug. 6, 2018) ("shotgun pleadings" "flout" Rule 8).   Counsel has submitted filings of a similar nature in unrelated matters in this District.   *See, e.g.*, *Chavarria v. New Jersey*, Civ. No. 18-14971, 2020 WL 7586946, at *2 (D.N.J. Dec. 22, 2020); *Hazzard v. Harvey*, Civ. No. 05-617, 2005 WL 8176064, at *2 (D.N.J. July 8, 2005).

The filing history for this case is also convoluted because Plaintiff's counsel has failed to comply with prior orders or adhere to court rules.   (*See, e.g.*, D.E. 178, ¶ 17; D.E. 180 at 2.)   For example, Plaintiff's counsel has filed multiple deficient statements of facts that violate the Local Rules.   *See* L. Civ. R. 56.1(a).   Where citations exist, they refer back to other statements or certifications without specifying docket entry numbers.   (*See, e.g.*, D.E. 183-2; D.E. 183-6.)   This labyrinth of procedurally flawed ECF filings is an independent ground for dismissal.   *See Albrecht v. Pinto*, Civ. No. 08-1103, 2009 WL 3242127, at *3 (D.N.J. Oct. 7, 2009).   However, "for the sake of completeness," this Court will assess the claims' merits.   *Id.*

[3] Claims alleged against the Orange Police Department, (*see* Compl. 3), will be read as alleged against Defendant Orange.   *See Eubanks v. Young Women's Christian Ass'n*, Civ. No. 13-2050, 2013 WL 4781033, at *4 (M.D. Pa. Sept. 5, 2013) (police departments are "agent[s] of the municipality").

### a. Odabro Incident

The bulk of the TAC involves a series of events stemming from an armed dispute between Plaintiff and Defendants Shahid Webb ("Defendant Webb") and Dennis Manning ("Defendant Manning") (collectively, the "Security Guards"), who both worked security at Odabro (the "Odabro Incident"). (*See* Compl.) In or around early 2017, Plaintiff worked as a guard for an agency called "24/7 Security" and was authorized to carry a gun while working at job sites listed on his permit, or when traveling directly to and from work.[4] (2019 Dep. 17:6–25, 19:18–22; D.E. 183-10, ¶¶ 1–2.)

On some unspecified date prior to May 15, 2017, Plaintiff "had an altercation" with the Security Guards. (Compl. 7, ¶ 2; D.E. 183-10, ¶ 3.) Plaintiff met Defendant Webb for the first time during this incident. (2019 Dep. 39:6–22.) Plaintiff was already acquainted with Defendant Manning because they had previously worked together in security guard roles. (*Id.* 35:9–17.)

On May 15, 2017, Plaintiff left a security shift wearing his uniform with his gun visible in a holster and arrived at Odabro. (*Id.* 56:19–57:23 (testifying that he intended to pick up his brother and arrived at roughly 1 or 2 A.M.), 60:17–22; D.E. 174-10, Aug. 14, 2020 Louis Dessources Dep.[5] ("2020 Dep."), 20:9–24.) Plaintiff entered the bar and was inside for at least an hour, at which time a fight broke out and patrons exited. (2020 Dep. 23:3–24:24; D.E. 183-10, ¶ 6(h); D.E. 189-1, Ex. 1, Nov. 9, 2020 Shahid Webb Dep. ("Webb Dep."), 12:17–23, 15:13–23 (noticing Plaintiff's gun as he exited and commenting, "How did he get in with his weapon[?]").)

---

[4] Plaintiff does not dispute that his handgun permit, authorized by New Jersey Superior Court Judge Alfonse J. Cifelli (the "Cifelli Order"), did not list Odabro as an authorized location. (D.E. 174-1 at 14; D.E. 174-6, Ex. C; D.E. 174-9, Aug. 29, 2019 Louis Dessources Dep. ("2019 Dep."), 122:11–24, 125:20–22, 130:11–12.) Plaintiff argues, however, that it was appropriate for him to stop at the bar with his gun because he was on the way home. (2019 Dep. 94:1-4.)

[5] Both of Plaintiff's depositions include speaking objections, witness coaching, and interruptions. (*See, e.g.*, 2019 Dep. 23:20–22, 61:12–18, 136:18–25, 151:21–152:8; 2020 Dep. 45:21–24, 62:1–11 (counsel interrupting deposition because he needed to "argue a case" that he was "just finding out about"), 63:19–22.)

According to a police report from that night, a call came in reporting a "quarrel" that escalated into Plaintiff "threatening" a guard with a "weapon." (D.E. 174-7, Ex. D, 4–5, 7; *but see* D.E. 183-6, ¶ 7.)  The report states that Defendant Webb "got into a confrontation" with Plaintiff because of his uniform and weapon, which Plaintiff had previously been told were not allowed in the bar. (D.E. 174-7, Ex. D, 7; Webb Dep. 14:6–23 (describing Plaintiff's history of attempting to enter the bar while armed).)  During the ensuing altercation, Defendant Webb grabbed and punched Plaintiff. (Compl., 9 ¶ 10; *but see* Webb Dep. 16:1–17:4.)  At some point, Defendant Manning joined the fray and began choking Plaintiff. (D.E. 183-10, 13 ¶ 6.)  Plaintiff alleges that Defendant Manning "pulled his weapon and pointed it at Plaintiff," and Plaintiff retaliated by pulling his weapon "from its holster and point[ing] it at Manning and Webb." (Compl., 9 ¶¶ 14–16; Webb Dep. 17:12–17; D.E. 174-7, Ex. D, 7.)

Several officers[6] arrived during the altercation and placed Plaintiff under arrest before bringing him to the station.[7] (D.E. 174-1, 4 ¶ 18.)  Plaintiff does not seem to have provided the Cifelli Order or explained that he worked as a security guard until he arrived at the station. (Wilson Dep. 10:14–11:9 (Plaintiff "couldn't really articulate" why "he was in possession of a firearm" at the scene), 16:4–14; 2019 Dep. 93:8–15 (during transport, when asked why he had a gun, Plaintiff said he "just came from work" and then he "just stayed quiet"), 102:5-14.)  Officer Wilson called 24/7 Security, who relayed that Plaintiff "was not authorized to be in uniform or to be carrying his weapon after work hours." (D.E. 174-7, Ex. D, 2; *see* D.E. 188-5, Dec. 7, 2020 Rennie Wilson

---

[6] The police report lists various officers but does not explain their roles in the incident. (D.E. 174-7, Ex. D, 2.)

[7] Plaintiff alleges that the Security Guards caused the following injuries: a cut lip, loose teeth, and a headache. (2019 Dep. 98:3–7.)  At the station, an emergency medical technician examined these injuries and chose not to give Plaintiff stitches. (*Id.* 158:22–25.)  Plaintiff claims that stitches were required. (*Id.* 159:17–24.)  Plaintiff did not seek medical treatment for these alleged injuries, nor has he provided any expert medical testimony to support his claims that he was physically hurt. (*See, e.g.*, 113:10–15, 160:3–20; 2020 Dep. 33:2–4 (Q: "Did you ever get any treatment for the injuries …?" A: "No.").)

Dep. ("Wilson Dep."), 47:25–48:23.)   Plaintiff was charged with "aggravated assault" and "possession of a weapon for unlawful purpose[s]."   (D.E. 174-7, Ex. D at 2.)   Plaintiff later had his firearm card and permit revoked.   (*See*, *e.g.*, 2020 Dep. 13:9–14:8.)   On October 4, 2017, a grand jury chose not to indict Plaintiff on the charges, which were subsequently dismissed.   (2019 Dep. 140:16–23.)

Plaintiff alleges that after his release, he asked the Orange Municipal Court and Police Department for the Security Guards' "full name[s] and address[es]" to file a "complaint" against them.   (Compl., 10 ¶ 20.)   Plaintiff asserts he was denied this information.   (*Id.*)   Plaintiff also alleges that he asked certain police officers to investigate the Security Guards for carrying weapons without permits, but the officers refused to do so.   (2019 Dep. 143:8–18; *but see id*. 152:13–16.)

### b.  Walgreens Incident

Over a year later, on May 22, 2018, Plaintiff "entered [a] Walgreens Store located" in Orange, New Jersey, (Compl. 37), where Defendant Webb was working as a guard, (D.E. 174-1 at 23–24).   After some sort of verbal dispute, police officers arrived on the scene (the "Walgreens Incident").

Plaintiff alleges that, as he walked into the store, Defendant Webb "started cursing" at him. (Compl. 14 ¶ 38; *but see* Webb Dep. 51:16–24 (stating that Plaintiff said something "threatening" to him upon entering the Walgreens).)   After this interaction, Plaintiff located the store manager and asked to lodge a complaint about Defendant Webb's behavior.   (2020 Dep. 60:8–17; D.E. 174-1, 27–28.)   In the meantime, Defendant Webb called the police.   (*See* D.E. 174-8, Ex. E, 4 (reporting that he had previously interacted with a man in the store who "may be" carrying a weapon); 2020 Dep. 70:22–24; D.E. 188-3, 37.)   The manager was "writing" down Plaintiff's

"statement" when police officers, including Officer Adrienzen, arrived.[8] (2020 Dep. 63:12–25.)
When the officers entered the room where Plaintiff was giving his statement, Officer Adrienzen
asked Plaintiff if he "had a weapon on [him,]" to which Plaintiff answered in the negative.[9] (2020
Dep. 65:25–67:21.) Next, Officer Adrienzen asked Plaintiff if he had identification. (*Id.*) Plaintiff
refused to provide any identification, instead responding that he "didn't do anything," questioning
"why" he had to give the police any identification, and saying other "stuff like that."[10] (*Id.*) At
that point, the officers pushed Plaintiff against a wall, placed him in handcuffs, and patted him
down. (D.E. 174-1 at 29–32; D.E. 174-8, Ex. E, 2 (the officers did not find "any kind of weapon").)
During this pat-down, Officer Adrienzen removed Plaintiff's wallet from his back pocket. (2020
Dep. 74:13–18.)

Plaintiff asked the officers to send a police supervisor to the scene. (*Id.* 80:21–23.) It took
roughly twenty minutes for the supervisor, Officer Banks, to arrive. (*Id.*) When she arrived,
Officer Banks directed the officers to remove Plaintiff's handcuffs. (*Id.* 85:20–86:3.) Once
uncuffed, Plaintiff began taking pictures of his wrists to document handcuff marks. (*Id.* 86:1–
88:12–20.) Officer Banks took Plaintiff's phone from him and deleted a recording of the events

---

[8] Plaintiff "never went back" to Walgreens to take the manager's name, obtain the partial statement she had written down, or obtain the store's video recordings. (*See* 2020 Dep. 59:16–18, 64:1–8, 83:13–17.)

[9] Plaintiff acknowledges that Officers Mendoza and Simmonds were not present at the Walgreens Incident. (D.E. 114:22-115:2.) Thus, of the named Defendants, it seems that only Officer Adrienzen and Officer Banks were present. (*See, e.g.*, D.E. 174-8, Ex. E.)

[10] The police report states that, at this point, Plaintiff "became arrogant," "belligerent," "disorderly," and "evasive." (D.E. 174-8, Ex. E, 4; *see also* D.E. 188-3, 42 (Plaintiff had demonstrated "aggressive and erratic behavior").)

6

that he had been making.[11]   (D.E. 174-1, 35–39; 2020 Dep. 89:4–90:2.)   Plaintiff was then handcuffed for a second time and brought outside.  (2019 Dep. 91:9–18; D.E. 174-8, Ex. D, 2 (police report stating that Plaintiff was "escorted" to his car "for his safety as well as the safety of the officers," where he received citations for being "parked in a handicapped" spot).)   Plaintiff alleges that the handcuffs temporarily bruised his wrists.[12]  (D.E. 174-1, 40.)

### c. Noise Complaint Incident

Plaintiff alleges that on June 17, 2018, an unnamed group of officers were responding to a noise complaint when they "trespassed" into his backyard and an unnamed officer "grabbed" Plaintiff by "his right shoulder."  (2020 Dep. 97:16-20; Compl. 35.)

Plaintiff also alleges that on September 8, 2019,[13] Defendants Miller, Simmonds, Mendoza, and Adrienzen assaulted him.  (Compl. 35.)  Officers arrived at 213 Snyder Street to "disperse" a very large crowd, (D.E. 188-3, 59–63), after an "argument" at a birthday party caused the police "to shut it down," (D.E. 188-5, 39–40 (affidavit from Roodloveson Estime stating that he hosted the party)).  An incident report states that Plaintiff refused to go home, continued to

---

[11] Plaintiff began a recording on his phone during his discussion with the Walgreens manager. (2020 Dep. 110:7–12.) It is unclear whether that recording was ongoing during his initial pat-down, or whether he had begun recording again once uncuffed for the first time. (D.E. 174-1 at 35–39; 2020 Dep. 89:6–90:2, 94:24–95:20.) The record is also unclear as to the photographs or records that Plaintiff alleges were deleted from his phone. (Compl., 16 ¶ 60 (seeming to suggest multiple items were deleted); 2020 Dep. 109:17–23 (only one recording was deleted).) Additionally, during his second deposition, Plaintiff located some of photographs he took at the Walgreens. (2020 Dep. 94:24–95:20.)

[12] As with the Odabro Incident injuries, Plaintiff testified that he never received any medical treatment for his Walgreens Incident injuries. (2020 Dep. 77:4–9:21.)

[13] There are few facts in the record regarding the Noise Complaint Incidents that have clear evidentiary citations.

At first, Plaintiff testified that he could not remember the officers who responded to the June 17, 2018 Noise Complaint Incident, (2020 Dep. 50:24–51:10), but he later testified that the Walgreens Officers also responded to the June incident, (*id*. 95:16–98:25; D.E. 193-3 at 22).

Plaintiff did not testify as to the events of September 8th, but the incident report from the event was written by Officer Adrienzen. (D.E. 188-3 at 59–63.) Additionally, in a late and poorly labeled filing, Plaintiff attached a statement including assertions related to this event. (*See* D.E. 188-3 (beginning at 21 of 83).) The statement, however, fails to provide docket numbers for the statements and certifications referred to as citations. (*See id*.)

cause a disturbance, and refused to provide identification.  (D.E. 188-3, 59–63; *see* D.E. 63 at 7

("[W]hy do you want to have my ID?".)  The report also states that Plaintiff eventually retreated,

while continuing his disturbance, first to a neighbor's stoop and finally to his own stoop at 236

Snyder Street.  (*Id.*; D.E. 183-6, ¶ 1.)  The report states that the incident ended with Plaintiff

"physically resist[ing] being placed under arrest" and "refus[ing] to submit to fingerprinting."

(D.E. 188-3, 59–63.)  Plaintiff's TAC states that these incidents (the "Noise Complaint Incidents")

are described in "attached letters."  (Compl. 36–37.)  There are no such letters attached to the

Complaint.  (*See id.*)

## II.   PROCEDURAL HISTORY

### a.  Motions for Summary Judgment

On May 17, 2018, Plaintiff filed suit in this Court alleging that the Defendants violated his

constitutional, statutory, and common law rights.  (D.E. 1.)  On June 26, 2019, Magistrate Judge

Leda D. Wettre granted a motion to amend filed by Plaintiff.  (D.E. 47; D.E. 48.)  After a series of

confused filings from Plaintiff, Judge Wettre issued an order on September 16, 2019 allowing

another Amended Complaint.  (D.E. 64.)   Plaintiff filed the Amended Complaint, but it was

repeatedly stricken.  (D.E. 65; D.E. 70; D.E. 72; D.E. 73.)  On October 4, 2019, the case was

reassigned to Magistrate Judge Edward S. Kiel.  On December 6, 2019, Plaintiff filed another

motion to amend the complaint.  (D.E. 84.)  On December 20, 2019, Judge Kiel granted in part

Plaintiff's request to amend the complaint to "add facts" related to events that "occurred after the

filing of the original complaint," but denied Plaintiff's request to join various additional

defendants.  (D.E. 87.)  Plaintiff filed the TAC on January 10, 2020, which directly contradicted

the order by naming the prohibited individuals.[14]  (*See*, *e.g.*, Compl. 5.)  On August 24, 2020, Plaintiff filed another motion to amend the complaint to add new claims from June 2020.  (D.E. 121.)  Judge Kiel denied that request on November 20, 2020.  (D.E. 135.)[15]  On December 21, 2020, Plaintiff filed another motion to amend the complaint to include Plaintiff's partner, Marie Converse, as a party.  (D.E. 143.)  Judge Kiel denied that request on December 31, 2020.  (D.E. 144.)

Discovery concluded on January 15, 2021.  (*See* D.E. 150; D.E. 151.)  The instant Motions were filed between January 29, 2021 and March 8, 2021.  (D.E. 148; D.E. 156; D.E. 157; D.E. 174; D.E. 177.)  On March 10, 2021, Judge Kiel struck another series of Plaintiff's filings and ordered them to be refiled properly.  (D.E. 178 (documents that did not comply with court rules would be stricken *sua sponte*).)  On April 5, 2021, two days after oppositions were due, Plaintiff requested an extension.  (D.E. 180 (blaming his printer, his clerical's vacations, and "conversion" problems).)  On April 5, 2021, Plaintiff also opposed Defendant Orange's Motion.  (D.E. 181.)  That same day, Judge Kiel allowed Plaintiff three additional days to oppose, specified that no "further extensions" would be authorized, and stated that, if Plaintiff's oppositions were late, the Motions would be deemed unopposed.  (D.E. 182.)  Later that day, Plaintiff opposed Odabro's Motion.  (D.E. 183 at 1-3; *but see id.* at 4-14 (not clearly responsive to a single Motion).)  Over the next week, Plaintiff filed a series of mislabeled, late documents.  (D.E. 188; D.E. 189; D.E. 190.)  On April 16, 2021, Defendant Orange replied to Plaintiff's opposition.  (D.E. 191.)  Plaintiff

---

[14] Thus, any allegations against Judge Michael Hackett, Mayor Dwayne Warren, Police Director Todd Warren, and Council Members of the City of Orange Township are deemed dismissed.  (*See* D.E. 126 at 2 (in an unsigned document, Plaintiff's counsel continuing to direct briefing at the barred Defendants).)

[15] Defendant Orange claims that the Noise Complaint Incidents are outside the TAC's scope, perhaps based on a misreading of this order.  However, the November 20 order barred the addition of the January 2020 allegations to the TAC, which already included the Noise Complaint Incidents.  (*Compare* D.E. 135 at 3, ¶ 5 (discussing the June 2020 incident) *with* D.E. 191 at 6.)

continued filing late documents.  (D.E. 197; D.E. 198, D.E. 199; D.E. 202; D.E. 203; D.E. 204.)[16]
On April 27, 2021, Odabro replied.  (D.E. 201.)  On May 6, 2021, the Odabro Officers replied.
(D.E. 206.)  On May 7, 2021, Officer Banks and the Walgreens Officers replied.  (D.E. 207; D.E.
208.)

### b.  Appeal of Judge Kiel's Order

On April 7, 2021, Plaintiff filed a request for default against Defendant Orange, citing its
failure to file an answer to the TAC.  (D.E. 184.)  That same day, Defendant Orange filed an
amended answer, (D.E. 186), and wrote a letter explaining that it had answered the original
Complaint but, due to Plaintiff's "eight" attempts "to amend the complaint," had inadvertently
failed to file an answer to the TAC, (D.E. 185).  On April 8, Judge Kiel noted that Defendant
Orange had filed its answer and denied Plaintiff's request for default.  (D.E. 187.)  On April 9,
Plaintiff filed a document styled as a reply to all Defendants, but which was actually a letter
addressed to this Court regarding Defendant Orange's answer and its inclusion of an Eleventh
Amendment affirmative defense to any claims asserted against the Orange Municipal Court.  (D.E.
189.)  On April 20, 2021, in another mislabeled document, Plaintiff filed a notice that he intended
to cross-move for summary judgment against all defendants.  (D.E. 192.)  Attached to that filing,
as if it were an exhibit, Plaintiff filed a notice of appeal of Judge Kiel's April 8, 2021 order.  (*See
id.*)  On April 21, 2021, Defendant Orange opposed both the notice[17] and the appeal.  (D.E. 193.)

---

[16] One such filing included a lengthy declaration from Plaintiff's counsel's clerk asserting that he had forgotten to file
certain documents.  (D.E. 199, D.E. 199-2 (stating that various filings were "newly discovered" and promising to
"investigate as to why or how things are and are not happening").)  On April 28, 2021, in response to complaints about
these filings from the Defendants, Judge Kiel issued an order stating that Plaintiff would not be directed to refile the
previously filed opposition papers but granting various requests for additional time to reply.  (D.E. 194; D.E. 195;
D.E. 200; D.E. 205.)

[17] Each of Plaintiff's attempts to cross-move for summary judgment has been, in some manner, procedurally improper.
However, to the extent that Plaintiff intended to cross-move based on the arguments presented in his opposition
briefing, those arguments have been considered within this Opinion.

### III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

11

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).   Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).   If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which … [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law.   *Celotex Corp.*, 477 U.S. at 322–23.   Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.   *Anderson*, 477 U.S. at 249.   The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible.   *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

## IV.   DISCUSSION

This Court will first address Odabro and the Orange Municipal Court's respective liability before moving on to address each individual count.[18]

### a.   Odabro

"Respondeat superior is a basis for vicarious liability when an employee-actor commits a tort against a third person." *Lau v. Lara*, Civ. No. 3864-10T4, 2013 WL 1858894, at *5 (N.J. Super. Ct. App. Div. May 6, 2013).   Although an employer may be liable for an employee's tortious conduct if it was committed "within the scope" of his "employment," generally speaking, "an employer that hires an independent contractor is not liable" for his "negligent acts." *Fontana v. Exec. Cars*, Civ. No. 4520-18T2, 2020 WL 3980410, at *8 (N.J. Super. Ct. App. Div. July 15, 2020) (citations omitted).   Thus, "[t]o establish liability under the doctrine of *respondeat superior*, a plaintiff must prove: '(1) that a master-servant relationship existed and (2) that the tortious act

---

[18] Many of the TAC's counts are duplicative.  (*See* Compl. 16–39.)  In an attempt to streamline its discussion, this Court will *sua sponte* strike duplicative claims, *see* Fed. R. Civ. P. 12(f) (a court may strike "any redundant, immaterial, impertinent, or scandalous matter"), and organize the remaining claims as follows.

Counts II and III include duplicative wrongful arrest and false imprisonment claims.  Count VIII lists a claim for malicious prosecution.  Together, these allegations are duplicative of Plaintiff's Fourth Amendment claims and will dismissed.  *See Ladd v. St. Louis Bd. of Police Comm'rs*, Civ. No. 05-916, 2006 WL 2862165, at *5 (E.D. Mo. Oct. 4, 2006) (striking false imprisonment and malicious prosecution claims because plaintiff had "twice attempted to re-cast his Fourth Amendment claim").

Count V presents a barebones New Jersey Civil Rights Act ("NJCRA") claim.  Because the NJCRA is interpreted coextensively with 42 U.S.C. § 1983*, Chapman v. N.J.*, Civ. No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009), and because civil claims for violations of the state constitution must be asserted pursuant to it, *see Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 548 (D.N.J. 2013), Count I's Section 1983 analysis controls any NJCRA or state constitutional claims.

Count VII asserts assault and battery claims that are duplicative of those in Count III.  Count X is largely incomprehensible, but mentions Equal Protection claims, which duplicate Count I. Count XI does not articulate any individual causes of action, but rather reiterates constitutional claims addressed in Count I.  Count XII asserts statutory claims that are duplicative of those in Count IV.

Thus, striking or combining duplicative counts, the remaining counts are as follows: Count I (Constitutional Claims), Count III (Assault & Battery), Count IV (New Jersey Law Against Discrimination ("NJLAD")), Count VI (Invasion of Privacy & Defamation), Count IX (Intentional Infliction of Emotional Distress ("IIED")), Count XI (Negligent Supervision & Training).

of the servant occurred within the scope of that employment.'" *Id.* at *8 (citing *Carter v. Reynolds*, 175 N.J. 402, 409 (2003)). When assessing the first prong, "the most important factor is the degree of control exercised by the principal … ." *McCarthy v. Recordex Serv.*, 80 F.3d 842, 853 (3d Cir. 1996); *see also* Restatement (Second) of Agency § 220 (1958).

Odabro's liability hinges on the employment status of its security staff. (*See* 2020 Dep. 34:12-18.) Odabro disputes whether a master-servant relationship exists between itself and the Security Guards, and Plaintiff has failed to provide record support that establishes an agency relationship. The testimony Plaintiff highlights fails to present any genuine issues of material fact as to, for example, whether the bar trained the Security Guards, oversaw their shifts, set their schedules, or set rules and ensured compliance with them.[19] *Cf. Greco v. United States*, 380 F. Supp. 2d 598, 623 (M.D. Pa. 2005); *see Shreiber v. Camm*, 848 F. Supp. 1170, 1180 (D.N.J. 1994).

On the other hand, Odabro has provided evidence that the Security Guards, who were licensed constables, were hired individually as independent contractors. (D.E. 148 at 2, 6–7 (describing the ways in which the Security Guards' employment did not amount to a master-servant relationship); D.E. 201 at 5; Webb Dep. 23:3–18 (Odabro did not provide him any training because he was hired based on his "previous" security experience); D.E. 148-7, Ex. C, Andrew Onyewuenyi Aff. (Odabro's owner discussing the Security Guards' employment status); Grand Jury Tr. at 6 (stating "[w]e can work anywhere in Essex County as a constable with police

---

[19] For example, Plaintiff points to Odabro's lack of employment or tax records but fails to explain how these facts relate to control, training, or direction. (*See, e.g.*, D.E. 189-1, Ex. 1, 9:6–8; D.E. 183-10 at 15, ¶ 7(a)–(b), 17–18); D.E. 188 at 76 (referencing a manager, Alpha, without providing his testimony).) Plaintiff also points to Defendant Webb's testimony in another case, where "employment status" was not at issue, and thus, was not carefully probed. (*See* Webb Dep. 32:16-38:16; D.E. 189-2, Ex. 2, Sept. 26, 2017 Grand Jury Tr. ("Grand Jury Tr."), at 5.)

powers"), 14–19.)  Thus, Odabro's Motion for Summary Judgment is granted.[20]  *See Worster v. Tropicana Ent., Inc.*, Civ. No. 13-1981, 2016 WL 4919266, at *4 (D.N.J. Sept. 12, 2016).

### b.  Orange Municipal Court[21]

The TAC alleges that Defendant Orange is liable for actions taken by the Orange Municipal Court ("Municipal Court") that denied Plaintiff access to the judicial system.  (Compl. 34–35.)  Plaintiff now argues that he intended to bring claims against the court's administrative staff and not the Municipal Court itself.  (D.E. 188 at 26.)  For the avoidance of doubt, if the TAC takes aim at the Municipal Court, summary judgment is granted on those claims.  *See Severino v. Middlesex Cty.*, Civ. No. 14-6919, 2015 WL 4042145, at *2 (D.N.J. July 1, 2015) (discussing immunity and Section 1983 bars to liability).)  However, because Municipal Courts are "established, maintained, and directed solely by the municipality," plausible claims against administrative staff would not

---

[20] An "employee's wrongful conduct may be so far removed from the scope of his duties that the conduct cannot be viewed as within the scope of the employment." *Vosough v. Kierce*, 437 N.J. Super. 218, 236 (App. Div. 2014).  Even if Plaintiff had demonstrated a master-servant relationship between the Security Guards and the lounge, which he has not, Plaintiff has not clearly alleged that tortious behavior arose in the course of employment.  (*See generally* D.E. 183); *Lau*, 2013 WL1858894 at *6 (describing the test to determine scope of employment).  For example, Plaintiff emphasizes an ongoing personal dispute between the Security Guards and Plaintiff, (*see, e.g.*, D.E. 204 at 4), without presenting evidence that Odabro should have reasonably foreseen this dispute or its potential to lead to either tortious or negligent actions.  At bottom, Plaintiff has not argued that the Security Guards were acting to serve Odabro, rather than carrying out a personal grudge.  *Cf. Mason v. Sportsman's Pub*, 305 N.J. Super. 481, 500 (App. Div. 1997) (allowing employer liability for bouncer' actions where there were "no facts in dispute which would negate or otherwise place in issue the imposition of liability based upon respondeat superior since, as a matter of law, [the guard] was acting within the scope of employment").)

[21] Plaintiff based his appeal on an argument that Defendant Orange's late assertion of an immunity defense as to the Orange Municipal Court caused Plaintiff prejudice.  To start, it is far from clear that Plaintiff's appeal is even procedurally proper.  (D.E. 192-3; D.E. 193 (discussing concerns with Plaintiff's appeal filing).)  Procedural questions aside, Plaintiff's appeal is also entirely frivolous.  (*See* D.E. 184.)  Plaintiff has not experienced any prejudice from the late filing.  (D.E. 190.)  Defendant Orange has been an active participant in this lawsuit for over two years, during which time it answered Plaintiff's original Complaint and asserted varied affirmative defenses related to immunity therein.  (*See* D.E. 5 at 24); *see also Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 394–95 (1998) (Kennedy, J., concurring) (immunity invokes issues of subject matter jurisdiction).  Plaintiff also made no effort to request less severe remedies before moving directly for default.  Given this history and context, this Court will affirm Judge Kiel's Order, which was neither erroneous nor contrary to law.  *Harrington v. Bergen Cty.*, Civ. No. 14-5764, 2017 WL 4387373, at *1 (D.N.J. Oct. 3, 2017).

necessarily be barred.  N.J.S.A. 2B:12–1; *see Ali v. City of Newark*, Civ. No. 15-8374, 2018 WL 2175770, at *4 (D.N.J. May 11, 2018).

In the TAC, however, discussions of administrative staff are irreparably conflated with the protected grand jury proceedings.  (*See*, *e.g.*, Compl. 19 (discussing the Complaint underlying the grand jury proceedings, which was "facilitated" by "Municipal Court Officers"), 27 (alleging that "court personnel" took part in defamatory judicial proceedings).)  Additionally, at an even more basic level, discovery has not borne out any "specific factual information" that would bolster the TAC's "vague, conclusory" allegations directed at court personnel, all of which lack names, dates, or concretely alleged wrongdoing.  *See Cain v. Nationwide Mut. Fire Ins. Co*., Civ. No. 00-1913, 2000 WL 1052085, at *1 (E.D. Pa. July 24, 2000); (2019 Dep. 107:1–25 ("I spoke to a lady …"), 141:2–144:2, 162:17–164:17.)  Thus, summary judgment for Defendant Orange is granted on all claims involving the Municipal Court or its administrative staff.

### c.  Count I: Constitutional Violations (All Defendants)

Count One lists various state and federal constitutional claims, which are seemingly brought pursuant to 42 U.S.C. § 1983 ("Section 1983").  "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).  The remaining Defendants are state actors.  Therefore, this Court will focus its analysis on whether their conduct deprived Plaintiff of specific constitutional rights.

Section 1983 does not create new substantive rights, but merely "provides a method for vindicating federal rights elsewhere conferred."[22]   *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotations and citation omitted); *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013).  A Section 1983 plaintiff "must specify the constitutional amendment he claims the defendant violated," *Anton v. Guarini*, Civ. No. 09-2899, 2010 WL 5258219, at *4 (E.D. Pa. Dec. 22, 2010), and "identify the exact contours of the underlying right," *Hilton v. Whitman*, Civ. No. 04-6420, 2008 WL 5272190, at *4 (D.N.J. Dec. 16, 2008) (internal citation omitted); *Ramirez*

---

[22] Plaintiff also claims relief pursuant to 42 U.S.C. §§ 1981, 1982, 1985, 1986, and 1988.  (Compl. 16.)  This Court briefly addresses these claims below.

The sole federal remedy for Section 1981 violations is Section 1983.  *See, e.g.*, *McGovern v. City of Phila.*, 554 F.3d 114, 120–21 (3d Cir. 2009).  It gives "all persons" the same right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws ... as enjoyed by white citizens and to be subject to like punishment, pains, penalties taxes, licenses, and exactions of every kind."  42 U.S.C.1981(a).  A plaintiff must prove "purposeful discrimination."  *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 3823–89 (1982).

Section 1982 gives "all citizens" the same "right ... as is enjoyed by white citizens ... to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982; *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 422 (1968).  "[A] plaintiff must demonstrate an intent to discriminate based on race."  *Homan v. City of Reading*, 963 F. Supp. 485, 491 (E.D. Pa. 1997) (citation omitted).

Section 1985 requires that a plaintiff allege: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen …"  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citations omitted).  Section 1985 actions are limited to conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus."  *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).

Section 1986 requires Plaintiff to establish a valid underlying Section 1985 claim.  *Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994); *see also Perez v. Cucci*, 725 F. Supp. 209, 254 (D.N.J. 1989) (Section 1986 is a "companion" to Section 1985).

Section 1988 gives "the court, in its discretion, the authority to allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  This makes it a form of relief, not an independent cause of action.  *See Russo v. City of Atl. City*, Civ. No. 13-3911, 2016 WL 1463845, at *9 (D.N.J. Apr. 14, 2016).

Here, Plaintiff makes no effort to establish the required elements of any of these claims.  (*See* D.E. 183, D.E. 188.)  Plaintiff has presented no evidence to support allegations of purposeful discrimination, racial discrimination, or contravention of property and contract rights by the moving Defendants.  *See infra* 24.  The record also fails to suggest a plausible conspiratorial intent or evidence of conspiratorial communications between the Defendants.  (*See* D.E. 188 at 25 (vaguely asserting, without citations, that "all Police at the scene and the Supervision" conspiratorially "agreed with the charges").)  "Without more, the bare allegation of an agreement is insufficient to sustain a conspiracy claim."  *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012).  As a result, this Court will grant Defendants' requests for summary judgment on Plaintiff's claims under Sections 1981, 1982, 1985, 1986, and 1988.

*v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1029 (9th Cir. 2002) (quoting *Graham*, 490 U.S. at 394–95).

Here, the conduct described in the TAC is best reviewed under the: (1) First Amendment (freedom of expression) (*see* Compl. 17); (2) Fourth Amendment (excessive force) (*id.*); and (3) Fifth and Fourteenth Amendments (due process and equal protection) (*id.* at 20).

### i. First Amendment[23]

 "The First Amendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition [their] government for redress of grievances." *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979).   Reading the TAC generously, Plaintiff seems to raise two First Amendment claims.

### 1. Officer Banks

Plaintiff describes an event where Officer Banks allegedly stopped him from recording and deleted his videos.   (Compl. 15.)   "[T]he public has the commensurate right to record—photograph, film, or audio record—police officers conducting official police activity in public areas." *Fields v. City of Phila.*, 862 F.3d 353, 360 (3d Cir. 2017).   "Accordingly, recording police activity in public falls squarely within the First Amendment," although this right is not absolute. *Id.* at 359.   Limits exist, for example, where an activity may interfere "with police activity" to the extent that it puts "a life at stake." *Sharpe v. Ellis*, Civ. No. 19-157, 2021 WL 2907883, at *4 (E.D.N.C. July 9, 2021) (*citing Fields*, 862 F.3d at 360)).

Additionally, qualified immunity attaches to protect an official's conduct when that conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019)

---

[23] The state constitutional right to free expression is "coterminous" with the federal right. *Williamson v. Newark Public Sch.*, Civ. No. 05-4008, 2008 WL 1944849, at *2 n.1 (D.N.J. May 1, 2008).

(citation omitted).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct," the contours of the right are "'sufficiently clear' that *every* 'reasonable official would [have understood] that what he is doing violates that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis in the original) (citation omitted).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."  *Fields*, 862 F.3d at 360–61 (citation omitted) (courts frame the "clearly established" inquiry "in light of the specific context of the case").

First, the record does not clearly demonstrate a First Amendment violation.[24]  Second, even if Plaintiff had clearly established a First Amendment violation, qualified immunity would attach to Officer Banks' conduct.  Arriving at the scene, Officer Banks was presumably aware that her colleagues were investigating a potentially dangerous man who had initially been noncompliant when asked for identification.  (*See* 2020 Dep. 86:21–87:8 (Officer Banks arrived and spoke to "Adrienzen, the manager, and Webb").)  Given Plaintiff's failure to rebut these facts or demonstrate whether the right to record was clearly established in June 2018, a reasonable juror could not determine that "*every* 'reasonable official'" would have understood that either ending a recording or deleting a recording violated the First Amendment.  *Ashcroft*, 563 U.S. at 741; *Fields*, 862 F.3d at 360–62.  Therefore, Plaintiff's First Amendment claim is dismissed on summary judgment.

---

[24] Officer Banks does not seem to dispute that she deleted a video from Plaintiff's phone, but argues that her behavior was justified because, upon being uncuffed, Plaintiff "grabbed his phone back from" her and "became combative." (D.E. 156 at 7–8.) Plaintiff did not specifically oppose Officer Banks' motion. Thus, Plaintiff's testimony is the only evidence regarding the deletion. (*See, e.g.,* D.E. 183-10 at 21, ¶ 25 (Officer Banks "deleted his stuff" and wanted to "delete more stuff"); 2020 Dep. 59:19–60:1, 67:22–68:7, 94:24–95:1, 109:4–110:17, 112:1–8); *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012) (the "issue is not whether Plaintiff has relied solely on his own testimony to challenge" summary judgment, but "whether Plaintiff's testimony, when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit Plaintiff's testimony, despite its self-serving nature").

### 2. Defendant Orange

Plaintiff also seems to allege that Defendant Orange, through the Orange Police Department and Municipal Court, refused to allow him to file a Complaint against the Security Guards. (Compl. 21.) As all claims related to the Municipal Court have been dismissed, *see supra* 14–15, this Court will only address Plaintiff's allegations as to the Orange Police Department.

A municipality's "liability for an alleged First Amendment violation must be based upon a policy or custom of the city rather than upon the act of an individual city employee." *Porter v. City of Philadelphia*, 975 F.3d 374, 382 (3d Cir. 2020); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). "A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy …" *Porter*, 975 F.3d at 383 (citations omitted).

There is no evidence that would allow a reasonable juror to conclude that Defendant Orange, acting through the Orange Police Department, had a policy or custom that barred Plaintiff's attempts to file a complaint against the Security Guards. Plaintiff offers only confused testimony regarding his visits to the Municipal Court and has failed to depose any representatives from Defendant Orange. (2019 Dep. 141:2–144:2, 162:17–164:17 (testifying that he believes that the Municipal Court was "giving [him] the runaround," because it made him "[g]o to the next window, go back to the police department").) Without any evidence of relevant customs or policies, summary judgment must be granted for Defendant Orange.

### ii. Fourth Amendment

Plaintiff also claims that Defendant Orange and the Officer Defendants unlawfully arrested him without probable cause and used excessive force. (Compl. 7–9, 17–18.) "The Fourth Amendment is not, of course, a guarantee against all searches and seizures, but only against

unreasonable searches and seizures."[25]  *United States v. Sharpe*, 470 U.S. 675, 682 (1985); U.S. Const., amend. IV.  "To maintain a § 1983 false arrest claim, a plaintiff must show that the arresting officer lacked probable cause to make the arrest."  *Garcia v. Cty. of Bucks*, PA, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (citation omitted).  "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense."  *Id.* (citation omitted).  Similarly, "brief, investigatory stops" are authorized "when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  *Manitta v. New Jersey*, Civ. No. 13-420, 2014 WL 6908459, at *4 (D.N.J. Dec. 8, 2014) (citation omitted).

Law enforcement excessive force claims are also "analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Graham*, 490 U.S. at 395.  Whether the use of force is "reasonable" is "judged from the perspective of a reasonable officer at the scene, rather than with 20/20 vision of hindsight."  *Id.* at 396 (citation omitted); *see also Kopec v. Tate*, 361 F.3d 772, 776–77 (3d Cir. 2004).  The presence of an injury may be considered in the analysis but is not dispositive.  *See Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011).  A court must consider a totality of the circumstances when assessing whether conduct "constitute[d] unreasonable force."  *Winslow v. The Borough of Malvern PA*, Civ. No. 08-1890, 2009 WL 4609590, at *5 (E.D. Pa. Dec. 7, 2009) (discussing tight handcuffing).

---

[25] The state constitution provides similar protection.  *See State v. Carter*, Crim. No. 083221, WL 3278023, at *20 (N.J. Aug. 2, 2021).

### 1. Odabro Officers[26]

The Odabro Officers' behavior was objectively reasonable. Crucially, the Odabro Officers were responding to a seemingly reliable report that a man had a gun at a busy club. *Karkut v. Target Corp.*, 453 F. Supp. 2d 874, 883 (E.D. Pa. 2006) (citation omitted) (it is reasonable for police to believe "that a security guard is a reliable witness"); (Wilson Dep. 11:2–9, 15:5–16, Compl. 23–24, 28.) Plaintiff, meanwhile, has presented no authority that suggests he was permitted to enter the bar with his weapon, let alone to remain there for an hour.[27] (*See* 2019 Dep. 122:21–24; 2020 Dep. 23:15–16.) Even then, Plaintiff failed to provide the Cifelli Order until he arrived at the station. (Wilson Dep. 10:14–11:9 (Plaintiff "couldn't really articulate" why "he was in possession of a firearm" at the scene), 16:4–14; 2019 Dep. 93:8–15 (during transport, when asked why he had a gun, Plaintiff said he "just came from work" and then he "just stayed quiet").) Simply put, applying a "common sense" approach, *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000), there is no question that there was probable cause for the arrest, (*see* D.E. 204 at 4–5 (acknowledging that a "common sense" approach applies to probable cause determinations)). Therefore, any brief period of administrative detention incident to the arrest was also appropriate. *See Sanducci v. City of Hoboken*, 315 N.J. Super. 475, 485–86 (App. Civ. 1998) (even if there was no probable cause, a short period of detention may not about to an "extended" period of "restraint").

---

[26] There is no evidence that Officer Hamm was even present during the Odabro Incident. (2019 Dep. 83:2–84:17; Wilson Dep. 77:2–9 (testifying that he was unsure if Officer Boyd or Officer Hamm were on the scene).) Plaintiff had no memory of interacting with Officer Wilson and testified that Officer Boyd was at the scene but did not partake in the Security Guards' alleged assault. (2019 Dep. 82:23–83:1, 103:29–104:1, 138:17–19; Wilson Dep. 37:16–18 (testifying that he was on the scene and transported Plaintiff to the station).)

[27] Plaintiff's assertions to the contrary are meritless. (D.E. 204 at 8 (inappropriately seeming to insist that the Cifelli Order should have made it clear to anyone who was not "retarded" or "malevolent" that Plaintiff was authorized to carry his gun at the lounge).) Counsel is cautioned to refrain from using unprofessional language—and making frivolous arguments—in federal court filings.

### 2.   Walgreens Officers & Defendant Banks

The officers present at the Walgreens Incident also had probable cause to investigate and briefly detain Plaintiff.[28]   (*See* 2020 Dep. 79:5–81:15.)   The record contains uncontroverted evidence that the Walgreens Officers had received a call from a security guard about a potentially armed individual in Walgreens.   (*See* D.E. 174-8, Ex. E; 2019 Dep. 61:22–25; 2020 Dep. 70:23–24.)   This "justif[ies] a reasonable belief that [Plaintiff] might be dangerous and that prompt protective measures, such as a frisk or a pat-down search, were dictated in order to complete an investigation of the complaint without creating a serious risk of physical injury."   *State v. Lakomy*, 126 N.J. Super. 430, 434 (App. Div. 1974); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000); *State v. Richards*, 351 N.J. Super. 289, 299 (App. Div. 2002).

Even accepting Plaintiff's version of the facts, there is no evidence upon which a reasonable juror could conclude that the application of handcuffs, or the taking of the cell phone, amounted to excessive force.   According to Plaintiff, the officers asked Plaintiff if he had a weapon and whether he had a form of identification.   (D.E. 183-10, 22, ¶ 29; D.E. 183-7 ¶ 12 ("Dessources says why do I have to give you my ID, like I didn't do anything, like do I have to give you my ID.");   D.E. 188-3 at *022.)   It was only after Plaintiff refused to provide the requested identification that they pushed him against the wall, patted him down, and put his belongings on the floor to make sure he did not have a gun.   (D.E. 183-10, 22, ¶ 29; D.E. 183-7 ¶ 12.)   Moreover, there is no evidence that Plaintiff suffered any kind of serious injury from the handcuffs.   (D.E. 188-3 at *023 (mentioning "bruises")); *see Graham-Smith v. Wilkes-Barre Police Dep't*, 739 F.

---

[28] This is an independent reason as to why Plaintiff's claims for wrongful arrest, false imprisonment, and malicious prosecution would fail.   *Luthe v. City of Cape May*, 49 F. Supp. 2d 380, 390–92 (D.N.J. 1999) (citation omitted) ("an arrest based on probable cause" cannot state a claim for false imprisonment or malicious prosecution); *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (a plaintiff must demonstrate that the defendant "initiated the proceeding without probable cause").

App'x 727, 732 (3d Cir. 2018) (summary judgment for defendant appropriate where plaintiff was handcuffed in order to be removed from a location and handcuffs caused superficial lacerations).

For similar reasons, the responding officers at both Noise Complaint Incidents also acted with probable cause.  The first incident involved a noise complaint, (2020 Dep. 97:16–20), and the second involved a dispute that required police intervention, (D.E. 188-5, 39–40).  As for Plaintiff's asserted injuries (a "pulled shoulder" at the first incident, and an unspecified "assault[] and batter[y]" at the second), the record again lacks any details or medical documentation.  (2020 Dep. 50:8–51:10; D.E. 188-3 at *024.)  Therefore, summary judgment must be granted for Defendants.

### 3.  Defendant Orange

To demonstrate a municipal Fourth Amendment Section 1983 claim, Plaintiff must show that the "actions of which [he] complains" are an "execution or implementation" of "a policy or decision officially adopted" by the municipality or "by those whose acts may fairly be said to represent official policy."  *McCarthy*, 2008 WL 5187889, at *4 (citations omitted).  The identified municipal policy must "be the moving force of the constitutional violation."  *Oklahoma City v. Tuttle*, 471 U.S. 808, 818–20 (1985).  As discussed above, *supra* 19–22, the officers did not act with excessive force or conduct a wrongful seizure, and there is no evidence of any municipal policy to harass Plaintiff, *see supra* 18–20.  To the contrary, the record demonstrates that Defendant Orange's official policies specifically prohibit the type of harassment complained of in this suit.  (*See* D.E. 178, Ex. B.)  Because the officers were investigating outwardly legitimate complaints, no reasonable juror could conclude that the municipality is guilty of a constitutional violation.

### iii.  Fifth and Fourteenth Amendments

Plaintiff also seems to allege that the Officer Defendants denied his constitutional rights to equal protection, due process, and access to the courts.  (*See* Compl. 17–21.)  The Fourteenth

Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "[T]o bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination.'" *Suber v. Guinta*, 927 F. Supp. 2d 184, 201 (E.D. Pa. 2013) (citation omitted); *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010) (internal citation omitted) (plaintiff "must present evidence" that he was "treated differently from persons who are similarly situated"). A plaintiff must allege the following: (1) membership in a protected class; (2) treatment that differed from similarly situated individuals; and (3) that the disparate treatment was based on their membership in the protected class. *See Kaul v. Christie*, 372 F. Supp. 3d 206, 254 (D.N.J. 2019) (citation omitted).

The Fifth and Fourteenth Amendments both encompass a "right to effectively use the courts."[29] *Kintzel v. Orlandi*, Civ. No. 14-2222, 2017 WL 1427074, at *3 (M.D. Pa. Apr. 21, 2017). To prove denial of access, Plaintiff must allege: (1) an "'actual injury'—that [Plaintiff] lost a chance to pursue 'nonfrivolous' or 'arguable' underlying claims"; and (2) that he has "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* at *3 (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008)).

Plaintiff briefly notes that he is of Haitian descent. (D.E. 199-2, Ex. 1, at 19.) Therefore, reading the facts generously, this Court will accept that Plaintiff has alleged membership in a protected class. *See, e.g.*, *Fitzpatrick v. Bergen Cty. Prob. Dep't.*, Civ. No. 05-1520, 2005 WL 1126794, at *3 (May 5, 2005) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (protected classes include race, alienage, and national origin). The record does not, however, provide any support for Plaintiff's vague assertions that he was treated differently

---

[29] "[A] cause of action cannot be based in substantive due process where a more specific constitutional provision is applicable." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001).

because of his national origin.  (*See* Compl. 37 (asserting that he was a "victim of a crime … just because he is a Haitian (foreigner)").)  Therefore, the Equal Protection claim fails.

Plaintiff's vague Fifth Amendment claims fail for similar reasons.  As discussed above, Plaintiff has not presented any evidence that he was denied judicial due process.  *See supra* 18. Nor has Plaintiff presented specific legal authority entitling him to immediately access the Security Guards' home addresses.  (*See* D.E. 174 at 30 (Defendant Orange noting that Plaintiff could have pursued other avenues to access this information but, seemingly, chose to forego them).)  Finally, Plaintiff's likelihood of success on any lost claims is negligible, at least in part because of genuine security concerns that may arise from proffering a victim's home address to his or her alleged assailant in the wake of a heated altercation.  (*See* D.E. 177-6 at 7.)  In sum, Defendants' Motions will be granted as to each of Plaintiff's constitutional claims.

### d.  Count III: Assault & Battery (Defendants Orange, Hamm & Boyd)[30]

A police officer may be held liable for assault and battery when the jury determines that the force used in making an arrest was "unnecessary or excessive."  *Postie v. Frederick*, Civ. No. 14-00317, 2016 WL 4521855, at *7 (M.D. Pa. Aug. 8, 2016) (citation omitted); *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009) (listing the elements for both torts).  The "reasonableness of the force used in making the arrest determines whether the police officer's actions constitute an assault and battery."  *Winslow v. The Borough of Malvern PA*, Civ. No. 08-1890, 2009 WL 4609590, at *7 (E.D. Pa. Dec. 7, 2009) (citation omitted).  As discussed above, *see supra* 19–23, the officers acted reasonably, with probable cause, and without unnecessary or excessive force when dealing with Plaintiff.  Because Plaintiff has failed to present a genuine

---

[30] The same is true as to the Walgreens Officers, because Plaintiff's wrist bruises, which were incidental to the reasonable investigatory stop, did not amount to assault and battery.

question of material fact as to the reasonableness of Defendants' actions, his assault and battery claims fail.

### e.   Count Four: NJLAD (All Defendants)

The NJLAD was enacted to "root out the cancer of discrimination." *Cicchetti v. Morris Cty. Sheriff's Office*, 947 A.2d 626, 641 (N.J. 2008).  In relevant part, Section 10:5-4 provides that "[a]ll persons shall have the opportunity to obtain employment [and] all the accommodations, advantages, facilities, and privileges of any place of public accommodation," without facing discrimination because of, *inter alia*, "national origin." N.J.S.A. § 10:5-4.  Similarly, Section 10:1-2 provides that "[a]ll persons" within New Jersey's jurisdiction "shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodation." N.J.S.A. § 10:1-2.

Here, Plaintiff has failed to present a *prima facie* case of discrimination that would fall within the statute's meaning.  *See* N.J.S.A. § 10:5-12.  Plaintiff has not provided authority to suggest that either Odabro Lounge or Walgreens qualifies as a  public accommodation, public entity, or public program.  *See* N.J.S.A. § 10:1-5.  And, although it is possible that under certain circumstances, police departments may qualify as public accommodations, *see Ptaszynski v. Uwaneme,* 371 N.J. Super. 333, 347 (App. Div. 2004), Plaintiff has failed to suggest any evidence that the Orange Police Department or the responding officers discriminated against him "on account of" his Haitian country of origin, *see Turner v. Wong*, 363 N.J. Super. 186, 213 (App. Div. 2003); (*see* D.E. 188).

### f.   Count Six: Invasion of Privacy and Defamation (Defendant Boyd)

New Jersey recognizes four invasion of privacy torts: "(1) unreasonable intrusion upon seclusion; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to one's private life; and (4) false light invasion of privacy." *Jevic v. Coca Cola Bottling, Co. of New*

*York, Inc.*, Civ. No. 89-4431, 1990 WL 109851, at *8 (D.N.J. June 6, 1990) (citation omitted). Plaintiff only alleges false light invasion of privacy, basing his claim on the Odabro Incident.[31] (*See* Compl. 26-27.)  To demonstrate false light invasion of privacy, Plaintiff must show (1) "that the false light" in which he was placed "would be highly offensive to a reasonable person" and (2) "that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [Plaintiff] would be placed." *Marino v. Westfield Bd. of Educ.*, Civ. No. 16-361, 2017 WL 216691, at *9 (D.N.J. Jan. 18, 2017) (internal citation omitted).

To state a claim for defamation, a plaintiff must identify a false statement made by a defendant who acted "with actual knowledge of or reckless disregard" for that "fact's truth or falsity" when communicating it to a third party. *Williamson v. Newark Pub. Sch.*, Civ. No. 05-4008, 2008 WL 1944849, at *4 (D.N.J. May 1, 2008).  Truth "is an absolute defense to a claim of defamation." *G.D. v. Kenny*, 984 A.2d 921, 928 (N.J. Super. App. Div. 2009).

Fatal to both claims, Plaintiff fails to identify any specific false statements that could either place Plaintiff in a false light or amount to defamation.  Here, Plaintiff was not "defamed" when a grand jury considered (and ultimately dropped) the charges, because the charges were based on probable cause.[32]   Further, Plaintiff fails to assert any plausible evidence of malice, or meaningfully respond to Defendants' privilege arguments.  *See Loigman v. The Township Committee, etc.*, 185 N.J. 566, 582–83 (2006); (*see* D.E. 204 at 5–6.)  Thus, summary judgment is granted for Defendants.

---

[31] Here, an intrusion upon seclusion claim would fail because officers "performing their official duties are not trespassers." *Rowe v. Mazel Thirty, LLC*, 34 A.3d 1248, 1255 (N.J. 2012).

[32] For the same reason, Plaintiff's state constitutional claims under Article I, Sections 8, 9, and 22 are denied.

### g.   Count IX: IIED (All Defendants)

"[T]o establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause," *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988), and distress "so severe that no reasonable person could be expected to endure it," *Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 384 (D.N.J. 1999).   A defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley*, 544 A.2d at 863 (quotation omitted).   A plaintiff must also show "that they suffered from a specific ailment and sought treatment for it." *Phillips v. N.J. Transit*, Civ. No. 19-13427, 2021 WL 1661087, at *12 (D.N.J. Apr. 28, 2021).

The record does not reflect either the requisite intent or level of harm.   Although Plaintiff asserts that he suffered loosened teeth and a cut lip during the Odabro Incident, the Odabro Officers did not contribute to those injuries.   (2019 Dep. 156:14–17.)   Further, because Plaintiff never sought treatment for any of the alleged injuries, (*id.* 161:3–8), he cannot present any evidence that could causally connect, for example, his dental complaints to Odabro Incident, (*see id.* 161:9–11).   Thus, a reasonable juror could not find in favor of Plaintiff.[33]   *See Botts v. The New York Times Co.*, Civ. No. 03-1582, 2003 WL 23162315, at *9 (D.N.J. Aug. 29, 2003) (dismissing IIED claim where plaintiffs failed to allege that they had "sought medical treatment for their distress").

### h.   Count XI: Negligent Supervision & Training (Defendants Orange & Banks)

Both the tort for negligent supervision and that for negligent training apply to "acts committed outside the scope of employment." *Hoag v. Brown*, 397 N.J. Super. 34, 54 (App. Div.

---

[33] Plaintiff also fails to present expert testimony. *See* N.J.S.A. 59:9-2(d).

2007) (citation omitted).  Again, Plaintiff's municipal claims are governed by *Monell*.  *See Laniado v. Cty. of Ocean*, Civ. No. 18-1513, 2019 WL 3451705, at *6 (D.N.J. July 31, 2019).

Establishing a Section 1983 failure to train claim is "difficult," and requires demonstrating a defendant's "failure to provide specific training," a causal link between this failure and the plaintiff's alleged injuries, and proof that the absence of that training reflected the defendant's deliberate indifference as to "whether the alleged constitutional deprivations occurred."  *Id.* at *6 (citations omitted); *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011) (listing the tort's elements).  A negligent supervision claim requires evidence "(1) that the employer knew or had reason to know" of the employee's "particular unfitness, incompetence or dangerous attributes," and "could reasonably have foreseen that such qualities created a risk of harm to other persons," and (2) "that through the employer's negligence, the employee's 'incompetence, unfitness, or dangerous characteristics proximately caused the injury.'"  *Simonson v. Formisano*, Civ. No. 20-20480, 2021 WL 2221328, at *5 (D.N.J. June 1, 2021) (citation omitted).

Here, the record contains no evidence (such as internal affairs documents, written policies, relevant sworn testimony, or expert report testimony) that could suggest negligent training or supervision.  Further, even if the officers had misbehaved, there is no evidence that Defendant Orange could have foreseen that misbehavior.  *See Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 741–43 (D.N.J. 2016); *infra* 13 n.20.  Therefore, Defendants' Motions are granted.

## V.    CONCLUSION

For the reasons set forth above, the Order (D.E. 187) is **AFFIRMED**, and Defendants' Motions (D.E. 148, 156, 157, 174, 177) are **GRANTED.**[34]  An appropriate order follows.

____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

---

[34]Thus, there is no need to discuss Plaintiff's failures to meet the New Jersey's Tort Claims Act ("TCA") requirements.

Orig:          Clerk
cc:            Edward S. Kiel, U.S.M.J.
               Parties